UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DONALD DOWD, et al.,

               Plaintiffs,

vs.

                                      Civil Action No.
                                      14-cv-14018

                                      Hon. Mark A. Goldsmith

DIRECTV, LLC, et al.,

               Defendants.
_____/

### OPINION AND ORDER
### GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS (Dkts. 49, 50, 52), DENYING DEFENDANT DIRECTSAT'S MOTION TO SEVER (Dkt. 34), AND DENYING PLAINTIFFS' CONDITIONAL MOTION FOR LEAVE TO AMEND THE COMPLAINT (Dkt. 64)

Plaintiffs bring this action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., claiming that their true status as "employees" under the Act has been disguised through a system of "fissured employment."   Defendants challenge this action in three motions to dismiss and a motion to sever, while Plaintiffs seek conditional leave to amend.   For the reasons stated below, all motions are denied.

### BACKGROUND

Defendant DirecTV is a provider of satellite entertainment services.[1]   Second Am. Compl. ¶ 1 (Dkt. 48).   In order to install and maintain satellite television systems for its consumers, DirecTV directly or indirectly engages individual technicians — including Plaintiffs — to do the work.   Id. ¶¶ 1, 34, 65.   Sometimes DirecTV engages its technicians directly as W-2 employees.

---

[1] Because of a 2011 merger between DirecTV, Inc. and DirecTV, LLC, see Second Amended Complaint ¶ 29, both named DirecTV Defendants are collectively referred to as DirecTV.

Id. ¶ 35.  Often, however, DirecTV utilizes intermediaries called "Home Service Providers," which manage the technicians, either directly or through yet more intermediaries.  Id.  The Second Amended Complaint refers to the intermediaries that contract with the Home Service Providers as "subcontractors."  Id. ¶ 39.

In addition to DirecTV, two Home Service Providers are named as Defendants: DirectSAT and Multiband (hereinafter, "the HSPs").  No subcontractors are named as defendants. The HSPs are not alleged to be subsidiaries of DirecTV.  Id. ¶ 30, 31.  Rather, their relationships with DirecTV are contractual.  Id. ¶ 39.  There is no alleged relationship between the HSPs, other than their "identical" contractual relationships with DirecTV.  See generally Second Am. Compl.; see also Pls. Resp. to Mot. to Sever at 8 (Dkt. 39).

Plaintiffs allege that DirecTV willfully orchestrated, and all Defendants willfully participated in, a system of "fissured employment."  Id. ¶¶ 1 & n.1, 54.  In that system, say Plaintiffs, Defendants attempt to hide their identities as "employers" or "joint employers" under the FLSA, thereby shirking their duties under the Act, by purporting to disassociate themselves from the workers responsible for DirecTV's services and products.  As discussed more fully below, Plaintiffs allege that DirecTV, either directly or through its contracts with the HSPs, maintained tight control over all operations by requiring all technicians to perform all of their work according to DirecTV's precise dictates, receive their work through DirecTV's work-order system, drive vehicles branded with the DirecTV logo, and wear DirecTV uniforms.  Id. ¶¶ 1, 67-75.

Eighteen of the instant Plaintiffs join claims against one or both HSPs and DirecTV; five only bring claims against DirecTV.  The core of Plaintiffs' claims against DirecTV and the HSPs, however, are identical:  that Plaintiffs are owed the minimum wages and overtime due to their

status as "employees" under the FLSA.   Another issue, common to all Plaintiffs, is whether any two Defendants are "joint employers," such that they are jointly and individually liable for any Defendant's FLSA violation.

In response to Plaintiffs' Second Amended Complaint, motions to dismiss were filed by Multiband, DirecTV, and DirectSAT (Dkts. 49, 50, 52).   Generally, these motions allege that Plaintiffs have not stated a plausible claim for relief, that no two Defendants are "joint employers" of any Plaintiff, and that certain plaintiffs' claims are time-barred.   Defendants also argue that certain Plaintiffs' compensation was sufficient under the FLSA.   DirectSAT also filed a motion to sever, arguing that, because only four out of 23 Plaintiffs name DirectSAT as a defendant, it would be prudent to hear those claims on a separate litigation track (Dkt. 34).

## ANALYSIS

### A.   Motions to Dismiss

In evaluating a motion to dismiss under Rule 12(b)(6), "[c]ourts must construe the complaint in the light most favorable to plaintiff, accept all well-pled factual allegations as true, and determine whether the complaint states a plausible claim for relief."   Albrecht v. Treon, 617 F.3d 890, 893 (6th Cir. 2010).   To survive a motion to dismiss, a complaint must plead specific factual allegations, and not just legal conclusions, in support of each claim.   Ashcroft v. Iqbal, 556 U.S. 662, 678-679 (2009).   A complaint will be dismissed unless it states a "plausible claim for relief."   Id. at 679; Bell Atlantic Corp. v Twombly, 550 US 544, 570 (2007).

### 1.   "Employee" Status Under the FLSA

The FLSA establishes a minimum wage, as well as overtime compensation for each hour worked in excess of 40 hours in each workweek.   See 29 U.S.C. §§ 206(a)(1), 207(a)(3).   These protections are only available to those workers defined as "employees" under the FLSA.   See id.

3

§§ 206(a)(1), 207(a)(3). "Whether a particular situation is an employment relationship is a question of law." Fegley v. Higgins, 19 F.3d 1126, 1132 (6th Cir. 1994). DirecTV and Multiband allege that Plaintiffs failed to plead facts creating a plausible claim that they were, in fact, employees, instead of independent contractors. Multiband Mot. at 21-22; DirecTV Mot. at 21.

The FLSA defines "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee," id. § 203(d), and "employee" as "any individual employed by an employer," id. § 203(e)(1). The Act further defines "employ" as "to suffer or permit to work." Id. § 203(g). In a given time period, an employee can have more than one employer under the FLSA. 29 C.F.R. § 791.2.

"The FLSA's definition of 'employee' is strikingly broad and stretches the meaning of 'employee' to cover some parties who might not qualify as such under a strict application of traditional agency law principles." Keller v. Miri Microsystems, LLC, 781 F.3d 799, 804 (6th Cir. 2015). "When determining whether workers are employees under the FLSA, the Court must look beyond mere labels and contractual agreements." Doucette v. DIRECTV, Inc., 2:14-cv-02800, 2015 WL 2373271, at *2 (W.D. Tenn. May 18, 2015). It is the "economic reality of the relationship between parties" that determines whether an employment relationship exists under the FLSA. Solis v. Laurelbrook Sanitarium & Sch., Inc., 642 F.3d 518, 522 (6th Cir. 2011).

The Sixth Circuit has identified six factors to consider when applying the "economic reality" test: (i) the permanency of the relationship between the parties; (ii) the degree of skill required for the rendering of the services; (iii) the worker's investment in equipment or materials for the task; (iv) the worker's opportunity for profit or loss, depending upon his skill; (v) the degree of the alleged employer's right to control the manner in which the work is performed; and (vi)

4

whether the service rendered is an integral part of the alleged employer's business." Keller, 781 F.3d at 807. No one factor is determinative; "[a] central question is the worker's economic dependence upon the business for which he is laboring." Donovan v. Brandel, 736 F.2d 1114, 1120 (6th Cir. 1984).

Multiband and DirecTV allege, generally, that Plainiffs have not pleaded sufficient facts to create a plausible claim of relief. See Multiband Mot. at 22; DirecTV Mot. at 22. The Court disagrees, concluding that Plaintiffs allege facts creating a plausible claim of an employment relationship with Defendants under the FLSA. Plaintiffs' allegations touch upon each of the six factors in the "economic reality" test, and, for all factors but one, their allegations support a plausible claim that there was an economic reality of employment.

Regarding the first factor — permanency of the relationship — Plaintiffs allege an ongoing relationship, as opposed to one limited to a single, discrete service. Second Am. Compl. ¶ 50 (Plaintiffs received work schedules "daily"); id. ¶¶ 104-241 (alleging, for each Plaintiff, an ongoing relationship of months to years). This factor supports an employment relationship.

Regarding the second factor — the degree of skill required — Plaintiffs allege that they were required to attend trainings designed by DirecTV at HSP-owned facilities, id. ¶ 71-72, and that they were required to obtain an industry-specific certification, id. ¶ 72. When business acumen is provided by the putative employer, as here, that fact supports an employment relationship under this factor. See, e.g., Usery v. Pilgrim Equip. Co., 527 F.2d 1308, 1314 (5th Cir. 1976).

Regarding the third factor — the worker's investment in materials and equipment — Plaintiffs allege that they had to purchase their own equipment and maintain their own vehicles, Second Am. Compl. ¶ 95, and that they were not reimbursed, id. ¶ 96. Because the ultimate focus

5

of these factors is Plaintiffs' dependence upon Defendants, <u>Solis</u>, 642 F.3d at 523, this fact weighs <u>against</u> an employment relationship.

Regarding the fourth factor — the worker's opportunity for profit or loss based upon skill — Plaintiffs allege that they were potentially subject to "charge-backs" that reduced their take-home pay. Second Am. Compl. ¶ 94. Some charge-backs were due to Plaintiffs' errors, <u>id.</u> ("improper installation"), and some were not, <u>id.</u> ("faulty equipment"). Viewed through the lens of Plaintiffs' "dependence" on Defendants, this factor supports an employment relationship. Although some reductions of Plaintiffs' take-home pay could be prevented if Plaintiffs did not make mistakes (thereby demonstrating some nominal independence), it is also apparently the case that neither mere competency nor exceptional skill would increase profit beyond the standard compensation. A plaintiff in a laboring arrangement with potentially much to lose, but no profit to gain, is not independent.

Plaintiffs' complaint supports an employment relationship under the fifth factor — the employer's right to control the manner in which work is performed — using robust factual allegations. Plaintiffs allege that DirecTV, via "Provider Agreements" binding the HSPs, controlled every aspect of how work was performed. <u>Id.</u> ¶¶ 40, 44-46, 51, 70. The HSPs monitored the technicians to ensure compliance with DirecTV's dictates. <u>Id.</u> ¶¶ 40, 46, 49. Any agreements between HSPs and subcontractors incorporated the provisions of the agreements between DirecTV and the HSPs, <u>id.</u> ¶ 46, meaning that DirecTV's requirements controlled at all levels, <u>id.</u> ¶ 44. Plaintiffs did not have discretion to perform their tasks in a manner they saw fit. Plaintiffs also allege that DirecTV set the hiring criteria for technicians, which the HSPs implemented and enforced. <u>Id.</u> ¶¶ 40, 72-74. These criteria included pre-screening and background checks, as well as a certification requirement. <u>Id.</u> ¶ 72.

6

Regarding the sixth factor — whether the service rendered is an integral part of the employer's business — Plaintiffs allege that they are among those who make up the "corps of service technicians" responsible for "install[ing] and repair[ing] DirecTV satellite television service." Id. ¶¶ 35, 34. Considering the important role of "common sense" in evaluating motions to dismiss, see Iqbal, 556 U.S. at 664, it is safe to conclude that DirecTV's business could not survive if its technicians did not install consumers' satellite dishes. Plaintiffs' services are, therefore, integral to DirecTV's business, which supports an employment relationship. Furthermore, Plaintiffs allege that DirecTV was the "primary, if not the only, client of the HSPs," Second Am. Compl. ¶ 37, so it follows that Plaintiffs' satellite installation services are integral to the HSPs, too.

In sum, Plaintiffs have alleged specific facts touching upon each of the six factors, and all factors but one (employees' investment in equipment) support employee status. Ironically, Defendants' claim that the Second Amended Complaint contains "no allegations whatsoever" regarding these factors, DirecTV Mot. at 22; Multiband Mot. at 22, is itself conclusory and contradicted by the Second Amended Complaint. Accordingly, Plaintiffs state a plausible claim that they were "employees" as defined in the FLSA. This aspect of Defendants' motions to dismiss is denied.

### 2. Joint Employment

Where an employee is jointly employed by two or more employers, the employers are individually and jointly liable for any FLSA violations committed by either of them. See 29 C.F.R. § 791.2(a). To assess whether Plaintiffs have stated a plausible claim of joint employment, the economic reality of employer control — rather than employee dependence — is the correct inquiry. See Bonnette v. California Health & Welfare Agency, 704 F.2d 1465, 1470

(9th Cir. 1983); <u>Hodgson v. Griffin & Brand of McAllen, Inc.</u>, 471 F.2d 235, 237 (5th Cir. 1973).

In order to determine whether an entity is a joint employer, some factors to consider include, but are not limited to, whether the alleged joint employer:  (i) had the power to hire and fire the employees, (ii) supervised and controlled employee work schedules or conditions of employment, (iii) determined the rate and method of payment, and (iii) maintained employment records.  <u>Bonnette</u>, 704 F.2d at 1470.

Defendants do not directly contend that these factors are not satisfied as between DirecTV and the HSPs; rather, Defendants claim that Plaintiffs "failed to allege any facts in support of an employee-employer relationships between themselves and the third party entities for which they allege they performed work."   Multiband Mot. at 23-24; DirecTV Mot. at 24; <u>see also</u> DirectSAT Mot. at 13.   Because of these supposedly inadequate factual allegations, Defendants state that they "cannot possibly be considered the <u>joint</u> employers of an individual who has failed to . . . raise a reasonable inference that he was <u>employed at all</u>."   Multiband Mot. at 23-24; DirecTV Mot. at 24 (emphasis in original).   And while Defendants acknowledge some Plaintiffs' assertions that they worked for the non-party subcontractors hired by the HSPs, Defendants attack these assertions as "conclusory."   Multiband Mot. at 23-24; DirecTV Mot. at 24; DirectSAT Mot. at 12-15.

Defendants' arguments ring hollow.   Defendants cite no authority, nor do they give a logical reason, why Plaintiffs' claims cannot be evaluated without an allegation that the subcontractors were also FLSA "employers."   Section 216(b) of the FLSA provides that "[a]ny <u>employer</u> who violates the provisions of section 206 or section 207 of this title <u>shall be liable</u> to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated

8

damages."   29 U.S.C. § 216(b) (emphasis added).   The Code of Federal Regulations further states that "all joint employers are responsible, both individually and jointly, for compliance" with the FLSA.   29 C.F.R. § 791.2(2)(a) (emphasis added).   And there is nothing in the multifactor tests for either employment or joint employment that requires a plaintiff to establish that he is an FLSA "employee" of each and every entity above him.   Other federal courts are in accord.   See, e.g., Chao v. Westside Drywall, Inc., 709 F. Supp. 2d 1037, 1062 (D. Or. 2010) (deeming absence of subcontractor immaterial to whether court could proceed with FLSA claim against contractor).

Moreover, contrary to DirectSAT's assertion, it is not the case that Plaintiffs "state nothing . . . about the nature of [Defendants'] relationship" with the subcontractors.   DirectSAT Mot. at 13.   Plaintiffs allege that the subcontractors were subordinate entities within DirecTV's network.   Second Am. Compl. ¶ 35.   They allege that the subcontractors were "largely captive entities" bound by contracts with the HSPs.   Id. ¶ 39.   These contracts between the HSPs and the subcontractors imposed DirecTV's hiring requirements on the subcontractors.   Id. ¶ 40.   Under these contracts, whether a given plaintiff worked for a subcontractor is irrelevant to whether the plaintiff had to perform his work according to DirecTV's mandates.   Id. ¶ 44-46.   Accordingly, to the extent that Defendants argue for dismissal based on insufficient allegations of an employment relationship with the subcontractors, this argument is without merit.

### 3.   Willfulness

A three-year statute of limitations applies to a claim that a defendant willfully violated the FLSA; if the violation is not willful, a two-year statute of limitations applies.   29 U.S.C. § 255(a) (FLSA actions must be commenced within two years "except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued.").   Periods of certain Plaintiffs' claims fall within the window between two and three years, such that

9

an insufficient allegation of willfulness would time-bar claims based upon events that occurred during that window.

Each Defendant asserts that Plaintiffs failed to plead willful violations of the FLSA. Multiband Mot. at 11; DirecTV Mot. at 13-16; DirectSAT Mot. at 23.   Although they acknowledge that the Second Amended Complaint uses the term "willfulness," see, e.g., Second Am. Compl. ¶¶ 80, 248-251, Defendants assert that it does so in a conclusory fashion insufficient to survive their motions.   Multiband Mot. at 9-11; DirecTV Mot. at 13-16; DirectSAT Mot. at 23. As an example of a sufficient allegation of willfulness, Defendants propose a hypothetical allegation, in which Plaintiffs communicated with Defendants regarding their alleged underpayment of wages prior to the lawsuit.   DirecTV Mot. at 14.   However, as it stands, the Second Amended Complaint states a plausible claim of willfulness.

An employer willfully violates the FLSA when it either knows its conduct is prohibited by the statute or acts with reckless disregard whether it is violative.   McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133 (1988).   In McLaughlin, the Supreme Court rejected a standard of willfulness that would extend the limitations period merely because "an employer knew that the FLSA 'was in the picture,'" because "it would be virtually impossible for an employer to show that he was unaware of the Act and its potential applicability."   Id. at 132-133.   At the motion to dismiss stage, "Plaintiffs must only state a plausible claim that the alleged violations were willful." Doucette, 2015 WL 2373271, at *5.

Courts in the Sixth Circuit have held that, so long as an FLSA defendant's alleged scheme is described in some detail, general assertions of willfulness create a plausible claim.   In Mabry v. Directv, LLC, for example, it was held that "detailed allegations about the Defendants' implemented policies allegedly intended to evade the FLSA 'does more than make the conclusory

assertion that a defendant acted willfully.'"   No. 3:14CV-00698-JHM, 2015 WL 5554023, at *5 (W.D. Ky. Sept. 21, 2015) (quoting Doucette, 2015 WL 2373271, at *5); accord Acosta Colon v. Wyeth Pharm. Co., 363 F. Supp. 2d 24, 29, 30 (D.P.R. 2005) ("[T]o make a factual finding regarding whether defendant's actions were willful is inappropriate at a motion to dismiss stage in the proceedings.").

Here, as in Mabry, "Plaintiffs extensively outline the employment policies and practices of DIRECTV and its providers, as well as DIRECTV's exercise of control over the technicians via the Provider Agreements."   2015 WL 5554023, at *5.   When placed in the context of Plaintiffs' general claim — that Defendants' policies exist for the sole purpose of willfully avoiding the FLSA — Plaintiffs' account of Defendants' policies suffice to state a plausible claim of willfulness.

Katoula v. Detroit Entertainment, LLC, 557 Fed. App'x 496 (6th Cir. 2014), relied upon by Defendants, is readily distinguishable.   In Katoula, a Family Medical Leave Act ("FMLA") case, the Sixth Circuit affirmed a district court's dismissal based upon the plaintiffs' insufficient allegation of willfulness, which made the claim untimely.[2]   One of the plaintiffs claimed FMLA leave in order to care for his sick mother — but, crucially, he did not use the leave time for that purpose.   Id. at 497.   He was later fired.   Id.   The court rejected the plaintiff's willfulness allegation, not because it was pleaded in insufficient detail, but because the plaintiff's failure to use his leave time for an FMLA purpose meant that the defendant simply could not have willfully interfered with the plaintiff's rights under that statute.[3]   Id.

---

[2] Courts analyze "willfulness" and the statute of limitations under the FMLA by reference to FLSA law.   See Hoffman v. Prof'l Med Team, 394 F.3d 414, 417 (6th Cir. 2005).

[3] Likewise, Defendants' citation to Rowlett v. Michigan Bell, No. 11-1269, 2013 WL 308881, at

Plaintiffs' recordkeeping allegations further shore up their claims of willfulness.   In Elwell v. University Hospitals Home Care Services, the panel held that "an employer's [inadequate] recordkeeping practices may . . . corroborate an employee's claims that the employer acted willfully in failing to compensate for overtime" under the FLSA.   276 F.3d 832, 844 (6th Cir. 2002); see also Majchrzak v. Chrysler Credit Corp., 537 F. Supp. 33, 36 (E.D. Mich. 1981) (same).   Here, Plaintiffs alleged a willful failure to comply with the FLSA's recordkeeping requirements.   Second Am. Compl. ¶¶ 80, 250.   Because this Circuit considers allegations of bad recordkeeping to be probative of willfulness, Plaintiffs' claims are all the more plausible. Accordingly, this facet of Defendants' motions is denied.

### 4.  Pleading Sufficiency Regarding Minimum Wage Claims

Every employer subject to the FLSA must pay each of its employees a minimum wage. See 29 U.S.C. § 206.   Defendants argue that, even as alleged by certain Plaintiffs, those Plaintiffs' compensation was sufficient under the FLSA, because their average hourly wage was above the federal minimum.   Multiband Mot. at 19; DirecTV Mot. at 16-19; DirectSAT Mot. at 21-23.[4]

---

*2 (W.D. Mich. Jan. 25, 2013), is unavailing.   Although Rowlett did reject a willfulness allegation as conclusory, the opinion did not actually analyze the complaint in a meaningful way. A review of the complaint reveals that, unlike the instant Plaintiffs, the pro se plaintiff did not make detailed allegations about the Defendants' implemented policies.   See Rowlett, 11-1269 (Dkt. 72).   Rather, the plaintiff simply stated that the defendant's alleged FLSA violation (i.e., failure to count all hours worked) was willful.   Id. at 3, 7 (PACER pages).   At one point, he alternatively referred to the FLSA-violating activity as "negligence," id. at 7, which mental state does not amount to willfulness.   Accordingly, Rowlett is not at odds with Mabry, and it does not support Defendants' claim that Plaintiffs' allegations were insufficient.

[4] One representative example from DirecTV's motion provides:

> [Plaintiff] Bacha alleges that he worked 73 hours per week and "would be paid $700 per week, which would be reduced by unreimbursed business expenses of $168 per week." SAC ¶ 192. Based on these allegations, Bacha was paid $7.29 per hour ($700 -

Defendants' arguments fail because, according to both case law and the statute, averaging an employee's hourly wages over multiple weeks is not permitted in order to determine whether a minimum wage violation occurred.  Title 29 of U.S.C. § 206(b) directs that "not less than the minimum wage rate" be paid to employees "who in any workweek is engaged in commerce" and "who in such workweek is brought within the purview of this section . . . ." (Emphasis added). This statutory language thus imposes a minimum wage by reference to an individual workweek, rather than to an average workweek.

Case law puts yet a finer point on it:   in the context of the FLSA, trial courts in this Circuit specifically have held that "work weeks may not be averaged to avoid the obligation to pay overtime . . . ."  Luther v. Z. Wilson, Inc., 528 F. Supp. 1166, 1173 (S.D. Ohio 1981) (citing Travis v. Ray, 41 F. Supp. 6, 9 (W.D. Ky. 1941) ("The rate per hour should be determined by treating each work week as a separate unit of time, the excess payment in one work week, if any, not being credited against any deficit which may exist in another.")).

 Thus, the conclusion reached by Defendants' mathematical calculations is based on the flawed legal premise that wages can be averaged over time in order to determine whether an employee has a claim to a minimum wage.  Defendant's motion in this regard is, therefore, denied.

Defendants also claim, more generally, that Plaintiffs failed to meet the Rule 8 pleading specificity requirements for the overtime and minimum wage claims, Multiband Mot. at 18; DirecTV Mot. at 17-18; DirectSAT Mot. at 15-21, because sufficient FLSA pleading requires that

---

$168 = $532 / 73 hours = $7.29), which exceeds the statutory minimum [of $7.25 per hour].

DirecTV Mot. at 19.

at least one <u>specific week</u> be singled out as having netted the employee less than the minimum wage.   DirecTV & Multiband Reply at 4-5 (Dkt. 67) (citing <u>Cooper v. DirecTV, LLC</u>, 14-08097-AB, slip op. at 7 (C.D. Cal. 2015); <u>Anderson v. DIRECTV Inc.</u>, 2:14-02307, slip op. at 5 (D. Ariz. 2015); <u>Chesley v. DIRECTV</u>, Civil Action Number 14-cv-468-PB, Opinion No. 2015 DNH 115, slip op. at 12 (D. N.H. 2015)).

Defendants' failure to cite a case within the Sixth Circuit is telling; on this issue, "[f]ederal courts across the country diverge on the application of <u>Twombly</u> and <u>Iqbal</u> to claims brought under the FLSA." <u>Doucette</u>, 2015 WL 2373271, at *6.   <u>Doucette</u>, a case from the Western District of Tennessee, surveyed case law nationwide to determine a complaint's required specificity regarding minimum wage and overtime.   It noted that, although the First, Second, Third, and Ninth Circuits have held that "a plaintiff must allege a given workweek in which he worked over 40 hours," <u>id.</u> at *7, "[o]ther courts — <u>including those within this circuit</u> — have determined that a plaintiff need not state these specific facts to survive a motion to dismiss[,]" <u>id.</u> (emphasis added); <u>see also</u> <u>Carter v. Jackson-Madison Cty. Hosp.</u>, 2011 WL 1256625, at *6-7 (W.D. Tenn. Mar. 31, 2011) (deeming sufficient a complaint that did not allege plaintiff worked in excess of forty hours in a week); <u>Noble v. Serco, Inc.</u>, No. 3:08-76-DCR, 2009 WL 1811550, at *2 (E.D. Ky. June 25, 2009) (deeming sufficient mere allegation that overtime was owed, without reference to specific week).

Here, even though it is likely not required in this Circuit, every individual Plaintiff estimates how much work was performed without compensation, often within a 10-hour window, <u>see, e.g.</u>, <u>id.</u> ¶ 220 (". . . 20 to 30 hours were . . . unpaid"), and sometimes to the hour, <u>see, e.g.</u>, <u>id.</u> ¶ 192 (". . . 37 hours of which were unpaid[.]").   Likewise, Plaintiffs uniformly allege that they always worked more than 40 hours per week.   Second Am. Compl. ¶¶ 105, 111, 117, 123, 129,

135, 141, 147, 153, 159, 165, 171, 177, 183, 189, 195, 201, 207, 213, 219, 225, 231, 237.

Plaintiffs' allegations, therefore, make plausible their claim that they are entitled to minimum

wages and overtime.   Accordingly, Defendants' motions in this respect are denied.

### 5.   Failure to Join a Necessary Party

During the time period at issue, non-party Skylink was DirecTV's sole HSP in two

Plaintiffs' service areas.   These two Plaintiffs worked for Skylink.   Second Am. Compl. ¶¶ 147,

195.   Those Plaintiffs now direct their claims toward DirectSAT, however, because DirectSAT

acquired Skylink via an asset purchase agreement.   See Asset Purchase Agreement ("APA") (Dkt.

52-10).   The APA expressly did not transfer Skylink's liabilities to DirectSAT.   See APA § 2.2.

The APA purports to be governed by Pennsylvania law, id. § 11.5, and according to DirectSAT,

Pennsylvania law gives absolute effect to an agreement's disclaimer of liability.   See DirectSAT

Mot. at 10 (citing Tender Touch Rehab Servs., LLC v. Brighten at Bryn Mawr, 26 F. Supp. 3d 376,

390 (E.D. Pa. 2014) ("[I]t is well-established that when one company sells or transfers all of its

assets to another company, the purchasing or receiving company is not responsible for the debts

and liabilities of the selling company simply because it acquired the seller's property.")).

DirectSAT alleges that Plaintiffs were required to join Skylink because, under the APA,

these Plaintiffs' recoveries, if any, must come from Skylink, and, therefore, "the court cannot

accord complete relief among existing parties."   Fed. R. Civ. P. 19(1)(a).

However, case law counsels that DirectSAT is incorrect.   Although it has not specifically

addressed the FLSA, the Sixth Circuit "has adopted the federal common law of successor liability

in employment law cases."   Clark v. Shop24 Global, LLC, 77 F. Supp. 3d 660, 691-692 (S.D.

Ohio 2015) (applying successor liability to an FLSA claim); see also Thompson v. Bruister &

Associates, Inc., No. 3:07-00412, 2013 WL 1099796, at *4-5 (M.D. Tenn. Mar. 15, 2013) (same).

And other circuit courts to consider the question have uniformly approved the applicability of successor liability under the FLSA.   See Thompson v. Real Estate Mortg. Network, 748 F.3d 142, 151 (3rd Cir. 2014); Teed v. Thomas & Betts Power Solutions, 711 F.3d 763, 765-767 (7th Cir. 2013); Steinbach v. Hubbard, 51 F.3d 843, 845 (9th Cir. 1995).   Thus, the APA does not necessarily immunize DirectSAT from being held liable for potential FLSA violations perpetrated by its target, Skylink.

Even acknowledging that successor liability is available to FLSA plaintiffs, however, a court must still exercise its discretion in deciding whether to apply successor liability.   To make that decision, courts balance (i) the interests of the defendant-employer; (ii) the interests of the plaintiff-employee, and (iii) the goals of federal policy, in light of the particular facts of a case and the particular legal obligation at issue.   Cobb v. Contract Transp., Inc., 452 F.3d 543, 554 (6th Cir. 2006) (permitting successor liability in FMLA claim).   In balancing these competing interests and goals, courts may consider a number of relevant factors, including:

> (1) whether the successor company has notice of the charge; (2) the ability of the predecessor to provide relief; (3) whether the new employer uses the same plant; (4) whether there has been substantial continuity of business operations; (5) whether the new employer uses the same or substantially same workforce; (6) whether the new employer uses the same or substantially same supervisory personnel; (7) whether the same jobs exist under substantially the same working conditions; (8) whether [the defendant] uses the same machinery, equipment and methods of production; and (9) whether [the defendant] produces the same product.

Id.

The Second Amended Complaint alleges facts that touch upon all of these factors. Plaintiffs allege that DirectSAT had notice of its potential liability, based upon the fact that DirectSAT's acquisition of Skylink changed very little internals except the company name;

16

previous supervisors, who would likely have knowledge of any willful FLSA violations, remained employed by DirectSAT.   Second Am. Compl. ¶ 62-63.   Plaintiffs also allege that the predecessor, Skylink, is not financially able to provide relief, whereas DirectSAT is.   Id. ¶ 63. Plaintiffs further allege that DirectSAT uses the same facilities and the same personnel to provide the same service, and that Skylink workers maintain the same jobs under the same conditions and with the same pay with DirectSAT.   Id. ¶ 62.   This amounts to a substantial continuity in operations, meaning that successor liability would not be inequitable.

That said, the primary inquiry remains focused on the two sides' competing interests, weighed against the federal policy served by successor liability.   See Cobb, 452 F.3d at 554. Such an analysis counsels applying successor liability in this case.   It goes without saying that denying successor liability is in DirectSAT's financial interests.   It is also true, however, that DirectSAT's interest in giving effect to the APA's disclaimer is directly opposed to Plaintiffs' competing interest in successor liability; without successor liability, Plaintiffs would be forced to seek recovery from Skylink's empty husk, which holds no assets.

The tie-breaking consideration must be given to "the goals of the federal policy," which was the very basis on which the Sixth Circuit extended successor liability to employment cases in EEOC v. MacMillan Bloedel Containers, Inc., 503 F.2d 1086, 1090-1091 (6th Cir. 1974).   On balance, these considerations, combined with the fact that a substantial continuity of Skylink's operations at DirectSAT avoids any undue prejudice to DirectSAT, compel a conclusion that successor liability is appropriate.   DirectSAT's motion to dismiss these two Plaintiffs is, therefore, denied.

### 6.   Private Right of Action for Statutory Recordkeeping Violations

The Second Amended Complaint accuses all Defendants of willfully failing to maintain

17

records of Plaintiffs' time and compensation.  Second Am. Compl. ¶¶ 80, 250.  DirectSAT moves to dismiss Plaintiffs' complaint to the extent that it seeks relief for these recordkeeping violations.  DirectSAT Mot. to Dismiss at 25 (citing Elwell v. University Hosps. Home Care Svcs., 276 F.3d 832, 843 (6th Cir. 2002) ("Authority to enforce the Act's recordkeeping provisions is vested exclusively in the Secretary of Labor.")); see also 29 U.S.C. § 217 (vesting the authority to prosecute recordkeeping violations in the Secretary of Labor).  Defendant's cited authority controls, and Plaintiffs have conceded this issue.  Pl. Resp. to Defs. Mot. to Dismiss at 12 n.9.

Accordingly, to the limited extent that the Second Amended Complaint purports to seek relief for any of Defendants' alleged recordkeeping violations, DirectSAT's motion is granted.

## B.   DirectSAT's Motion to Sever (Dkt. 32)

DirectSAT's motion to sever asks that the instant action be carved up into two parallel lawsuits — one for claims brought against DirecTV and Multiband (or just DirecTV), and one for claims brought against DirecTV and DirectSAT.

Joinder is permitted (and, in turn, severance is not required) when a plaintiff asserts a right to relief against the defendants "jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences."  Fed. R. Civ. P. 20.  Further, the plaintiff must assert that a "question of law or fact common to all defendants will arise in the action."  Id.  Even if these two prerequisites are met, a court may, at its discretion, nevertheless sever the case "to protect a party against embarrassment, delay, expense, or other prejudice that arises from including a person against whom the party asserts no claim and who asserts no claim against the party."  Id.

Arguing first that joinder is not permitted, DirectSAT focuses exclusively on the lack of a relationship between Multiband and itself.  DirectSAT emphasizes that the HSPs are independent

18

of one another, have no contractual relationships with one another, and do not engage in any transaction or series of transactions with one another, Mot. to Sever at 5, 6, 10, 12, 14; that Plaintiffs fail to allege joint employment "between any single HSP and another HSP," id. at 6; and that no Plaintiff alleges joint and several liability against both HSPs, id. at 11.

Cases have interpreted permissible joinder to require a "logical relationship" between the causes of action.  See In re EMC Corp., 677 F.3d 1351, 1358 (Fed. Cir. 2012).  The Supreme Court has stated that, under the Federal Rules of Civil Procedure, "the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged."  United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 724 (1966).  Notably, in a case cited by Defendant, the court stated that it would not have found misjoinder if it could "identify a collective or controlling entity (either formal or informal) from which" the illegal policy originated.  Wynn v. Nat'l Broad. Corp., 234 F. Supp. 2d 1067, 1079 (C.D. Cal. 2002).  On that point-of-origin theory, the Wynn court contrasted its facts with those in United States v. Mississippi, 380 U.S. 128 (1965), which held that six county registrars were properly joined when it was alleged that the registrars had acted pursuant to a state-wide system designed to discriminate.

Here, a "logical relationship" exists between the HSPs, because they share a contractual nexus in DirecTV.  All claims arise out of the same "series of transactions and occurrences," because Plaintiffs' claims focus on the "fissured employment" system that DirecTV and the HSPs implemented together.  If true, this single, consistent, DirecTV-originated system of dodging the FLSA comprises the same "series of transactions or occurrences."  And all claims assert a common question of law or fact, because all claims focus on whether those contracts create duties that form an "employment" relationship under the FLSA.  The lack of a direct relationship

19

between the HSPs is beside the point.   Accordingly, joinder of all claims against these Defendants was not per se inappropriate.

Next, DirectSAT asserts that, even if joinder was technically permissible, the Court should exercise its discretion to find misjoinder.   Again, a court may, at its discretion, sever the case "to protect a party against embarrassment, delay, expense, or other prejudice that arises from including a person against whom the party asserts no claim and who asserts no claim against the party."   Fed. R. Civ. P. 20(b).   In support, DirectSAT argues that the factfinder will have trouble keeping straight which evidence applies to which HSP.   Mot. to Sever at 17.   It also argues that severance will promote judicial economy, id. at 19, and that severance will avoid disclosure of proprietary secrets to Multiband, a competitor, id. at 19-20.

There is no need, however, to sever these lawsuits.   Almost all facts that are unique to individual plaintiffs or defendants are confined to the calculation of damages; these issues likely can be refined during discovery without undue risk of confusing the factfinder's separate decision on the merits.   Moreover, Defendant's argument regarding judicial economy is conclusory and, therefore, baseless.   If anything, judicial economy would be served by maintaining joinder. Finally, DirectSAT's argument regarding sharing trade secrets with Multiband fails to persuade; DirectSAT does not describe what sort of information it would be required to disclose that would be a secret, or why filing under seal would be an inadequate safeguard.   The cases will remain joined.   DirectSAT's motion to sever is denied.

### C.   Plaintiffs' Conditional Motion for Leave to Amend (Dkt. 64)

Plaintiffs filed a short motion for leave to amend, requesting 30 days to file a third amended complaint in the event that the Court grants, in whole or in part, any of Defendants' three motions to dismiss.   Because Defendants' motions are denied (except for the stipulated dismissal

of the recordkeeping cause of action), Plaintiffs' conditional motion to amend is denied as moot.

## CONCLUSION

For the reasons set forth above, Defendants' motions to dismiss (Dkts. 49, 50, 52) are denied, except to the limited extent that DirectSAT moved to dismiss a cause of action based upon an alleged recordkeeping violation; DirectSAT's motion to sever (Dkt. 34) is denied; and Plaintiffs' conditional motion for leave to amend the Second Amended Complaint (Dkt. 64) is denied as moot.

SO ORDERED.


Dated:  January 4, 2016                              s/Mark A. Goldsmith
Detroit, Michigan                                   MARK A. GOLDSMITH
                                                    United States District Judge


## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on January 4, 2016.

                                    s/Karri Sandusky
                                    Case Manager